UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD HUSKEY, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 4:17-CV-02415 JAR ) ) |
| BIRCH TELECOM OF MISSOURI, INC., et al., | ) ) ) ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on Plaintiff Richard Huskey's Motion to Certify a Class Pursuant to Federal Rule of Civil Procedure 23 and Missouri Supreme Court Rule 52.08. (Doc. 5.) Defendants Birch Telecom of Missouri, Inc., Ionex Communications, Inc., and Birch Communications, Inc., oppose certification. (Doc. 2.) Plaintiff did not file a reply.

## Background

Plaintiff filed suit on behalf of himself and the "thousands of individuals" allegedly harmed when Defendants engaged in a deceptive marketing scheme designed to trap consumers in an unconscionable contract, in violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. ch. 407. (Docs. 5, 35.) Specifically, Plaintiff alleges that the contract is procedurally unconscionable because the Defendants "cold-called" consumers and used high-pressure sales tactics and misleading information to induce them into accepting a telephone services contract they had not, and could not have, reviewed. (Doc. 35.) In addition, Plaintiff alleges that the contract included substantively unconscionable terms relating to canceling the service and price increases. He asserts that Defendants' contract "improperly cause[d] economic damage to him [and class

members] in several various manners": "a relatively enormous 'initiation' fee" totaling "upwards of $150"; unilateral price increases, which, in Plaintiff's case, were around $140[1]; "exorbitant 'early termination fee(s),' upwards of $400 in many cases"; and, "specifically in the case of [Plaintiff,] . . . attorneys' fees and expenses in bringing this action." (*Id.* at 10-12.)

Plaintiff moves to certify a class defined as "All past or present residential Birch customers that are citizens of Missouri, and who the Defendant deemed bound by the terms of their Master Services Agreement, or 'MSA' . . . at any time during the Class Period." (*Id*. at 2.) Plaintiff states that the class period runs from August 17, 2012 to August 17, 2017. (*Id*.)

**Analysis**

Under Rule 23(a)[2], a plaintiff must establish four elements to maintain a class action:

  **(1)** the class is so numerous that joinder of all members is impracticable;
  **(2)** there are questions of law or fact common to the class;
  **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
  **(4)** the representative parties will fairly and adequately protect the interests of the class.

As noted, Plaintiff alleges that the class "includes thousands of individuals," but does not otherwise attempt to enumerate the potential membership. (*Id*. at 3.) Plaintiff asserts that his claim is "typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct" but later states that not every potential class member suffered every economic harm. (*Id*. at 3, 12.) For instance, Plaintiff states that "only a portion of Plaintiff[s]"—which portion does not include him—paid a termination fee. (*Id*. at 12.) Nevertheless, Plaintiff asserts that any individual differences among class members are outweighed by the questions of law and fact common to all. (*Id*. at 3-4.) Likewise, Plaintiff asserts that his interests align with those of the class and that he has

---

[1] Specifically, Plaintiff asserts that his introductory rate of $39.99 was increased to $59.99 in the second month and $79.99 in the third, but it is unclear to the Court how those numbers support Plaintiff's allegations.
[2] The elements of Mo. Ct. R. 52.08 mirror Fed. R. Civ. P. 23.

retained "competent and experienced" counsel, making him an adequate representative of the class. (*Id*. at 3.)

Defendants challenge nearly every one of Plaintiff's assertions. As an initial matter, they argue that the class definition is so broad that it would include customers who have not suffered any of the "economic injuries" Plaintiff alleges. (Doc. 2 at 3-4.) Defendants also assert that Plaintiff failed to adequately establish the numerosity, typicality, or adequacy requirements of Rule 23. (*Id*. at 6-11.)

1. *Class Definition*

Defendants first argue that Plaintiff's class definition is too broad. "The Eighth Circuit has held that a proposed class 'must be adequately defined and clearly ascertainable.'" *Cope v. Let's Eat Out, Inc.*, 319 F.R.D. 544, 551 (W.D. Mo. 2017) (quoting *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016)). "The Court's ascertainability inquiry is intertwined with its analysis of standing." *Id*. at 551–52. "The class definition must enable the Court to determine objectively who is in the class, and thus, who is bound by the ruling." *Glen v. Fairway Indep. Mortg. Corp.*, 265 F.R.D. 474, 477 (E.D. Mo. 2010), *order clarified,* No. 4:08CV730 RWS, 2010 WL 891621 (E.D. Mo. Mar. 8, 2010) (quoting *Walls v. Sagamore Ins. Co.,* 2009 WL 890528, *4 (E.D. Ark. March 31, 2009)). "[T]he Court should not have to engage in lengthy, individualized inquiries in order to identify members of the class," *id*. (quoting *Walls*, 2009 WL 890528 at *4), but "individual inquiries into the amount [of damages] will not bar certification of the proposed classes" and a class definition is not necessarily overbroad solely because it would include some member who was not injured, or a member who suffered an injury different than the representative's. *Let's Eat Out*, 319 F.R.D. at 553.

The Court concludes that Plaintiff's proposed class definition is not fatally broad. Of significant weight is Plaintiff's claim that the MSA is substantively unconscionable, which, if

proved, would injure anyone bound by the contract. Whether that injury resulted in an "ascertainable loss" to each class member would require an individualized inquiry, but, as stated above, the necessity of an inquiry into damages is not enough to defeat class treatment. Moreover, the Court agrees with Plaintiff that Defendants likely have in their possession all necessary records to efficiently complete that inquiry.

2. *Numerosity*

"A class may not be certified unless the proposed class is so large that joinder of all class members would be 'impracticable.'" *Fairway*, 265 F.R.D. at 478 (quoting Fed. R. Civ. P. 23(a)(1)). Defendants argue that Plaintiff's assertion that, "based upon information and belief, the Class includes thousands of individuals" is too vague and unsupported by any concrete evidence of numerosity.

Generally speaking, a bare assertion that there are "thousands of persons in the Class" is not a reasonable estimate. *Campbell v. Purdue Pharma, L.P.*, No. 1:02CV00163 TCM, 2004 WL 5840206, at *4 (E.D. Mo. June 25, 2004). However, "impracticable" only requires "a showing that it would be extremely difficult or inconvenient to join all members of the class." *Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996) (citing *Gentry v. C & D Oil Co.,* 102 F.R.D. 490, 493 (W.D. Ark. 1984)). "Relevant factors include the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the class members." *Id.* (citing *Paxton v. Union National Bank*, 688 F.2d 552, 560-61 (8th Cir. 1982)). The Court may rely on "reasonable inferences drawn from facts before [it]" when evaluating numerosity. *Id.* (quoting *Wethington v. Purdue Pharma LP*, 218 F.R.D. 577, 585 (S.D. Ohio 2003)).

The Court first notes that Defendants do not argue that the number of potential class members is too small to meet the numerosity requirement; they only argue that Plaintiff's assertion

is insufficient. Second, the Court recognizes that courts commonly find numerosity in classes of at least forty members and have certified classes with fewer than that. *See Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996) (considering nineteen identified plaintiffs sufficient to proceed) (citing *Esler v. Northrop Corp.,* 86 F.R.D. 20 (W.D. Mo.1979) (opining that classes of forty or more are typically considered numerous enough to proceed)). Given that Defendants sell telecom services across Missouri, the Court believes it can reasonably infer that the class includes more than forty potential members.

### 3. *Commonality and Typicality*

Defendants next argue that the facts vary too significantly between each class member's claim and that the facts underlying Plaintiff's claim are not typical. (Doc. 2 at 7-8.) Defendants assert that each telephone call to an individual class member was unique and would require such intensive fact-finding into each claim that class treatment would be impracticable. (Doc. 2 at 7-8.)

To establish commonality, the Plaintiff must show that "there are questions of law or fact common to the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting Fed. R. Civ. P. 23(a)(2). Although "[a]ny competently crafted class complaint literally raises common questions," Plaintiff must "demonstrate that the class members have suffered the same injury." *Id*. at 350-51 (citations and internal quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 351.

The Court finds that Plaintiff alleges a common question of law, the resolution of which is central to the validity of every potential class member's claim, namely: *Is Defendant's MSA unconscionable?* Proving that a contract is unenforceable as unconscionable requires a showing of *both* procedural and substantive unconscionability. *Davidson & Assocs., Inc. v. Internet Gateway,*

*Inc.*, 334 F. Supp. 2d 1164, 1179 (E.D. Mo. 2004), *aff'd sub nom. Davidson & Assocs. v. Jung*, 422 F.3d 630 (8th Cir. 2005). Because the class is defined as anyone who was bound by the MSA, proof that the contract is unconscionable would necessitate a finding that it is unenforceable against everyone in the class. Defendants' argument that each class member traveled a different route to being bound by the MSA is well-taken, especially in light of Plaintiff's claim that there was unconscionability in the contracting process, but the Court concludes that those procedural differences are less relevant than the class-wide determination of the substantive unconscionability of the MSA. The Court therefore concludes that commonality is present.

However, Plaintiff testified that he is unsure how he himself came to receive Defendants' telecom services and could not say whether he had ever received a telephone call. (*Id.* at 8.) On this basis, Defendants argue that Plaintiff's claim is not typical. "The typicality requirement as customarily applied tends to merge with "commonality."" *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562 (8th Cir. 1982) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). "Rule 23(a)(3) 'requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff.'" *Id.* (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). "This requirement is generally considered to be satisfied 'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'" *Id.* at 561-62 (quoting C. Wright & A. Miller, *Federal Practice and Procedure* § 1764 at n.21.1 (Supp. 1982)). "The burden of showing typicality is not an onerous one. It does, however, require something more than general conclusory allegations." *Id.* at 562.

The Court first notes that Plaintiff's claim is typical of the class insofar as he is bound by the allegedly unconscionable MSA, as is every class member. However, that Plaintiff may not have been induced to accept the MSA through a telephone call goes to the heart of his claim that

the MSA is procedurally unconscionable, and calls into question whether his claim is similar to other class members'.

In his deposition, Plaintiff states multiple times that he cannot remember how he came to acquire Defendants' telecom services. Plaintiff testified that he received a bill for services he had never requested. (Doc. 2-1 at 22:4-10.) When opposing counsel asked Plaintiff how he "first came to do business with Birch Communications," Plaintiff responded, "I don't really remember." (*Id*. at 22:11-14.) After apparently struggling to recall who had been his telephone service provider before and after Birch, Plaintiff attempted to describe how he ended up with Birch services, saying,

> [I]t got kind of screwy right in there. I can't really tell you – it seems like there was some other provider in there as well and I don't know for sure. It was – because I was communicating with Southwestern Bell. I was – I was – I was – they – and they had asked me to sign up with them and then Birch came and got me to – no, they sent me bills. They didn't give me – they give me some bills is what happened. That's the best I can remember. And that went on for a long time but it was only because I wasn't making their payments because I didn't owe them any money.

(*Id*. at 24:3-14.) When opposing counsel tried to clarify, asking, "[D]id you do anything yourself to cause Birch to become your telephone service carrier for a time?," Plaintiff responded, "Of course. They asked me to." (*Id*. at 24:20-23.) Opposing counsel asked, "And how did they ask you to?" (*Id*. at 24:24.) Plaintiff responded, "That I don't know." (*Id*. at 24:25.) "Was that in a telephone call?," opposing counsel asked. (*Id*. at 25:1.) "Well, I – could have been. "Let's see. I couldn't – no, I can't tell you," Plaintiff responded. (*Id*. at 25:2-3.) Plaintiff further testified that he could not recall "any conversation with Birch on the subject of switching." (*Id*. at 25:9-17.) Later, when asked again if he could remember how Birch became his telephone service provider, Plaintiff answered, "I'd say they – they asked me. I don't know how they asked me, I don't know how that ever happened, but they came in my house with the phone service." (*Id*. at 27:9-15.) "Did you speak with someone on the telephone?," opposing counsel asked. (*Id*. at 28:7-8.) "I assume it was

on the phone," Plaintiff answered, but he then confirmed that he could not remember any telephone conversation with Birch. (*Id*. at 28:9-12.)

Plaintiff's inconsistent deposition testimony and incomplete memory is insufficient to establish that he was induced to accept the MSA through unconscionable means and the "general conclusory allegations" of procedural unconscionability made in his complaint are not enough to overcome that insufficiency. *See Paxton*, 688 F.2d at 562. If Plaintiff's contract with Defendants was not the product of an improper phone call, he cannot establish that his claim is typical of the alleged injuries to the class—namely the unconscionable inducement to accept and unconscionable contract beginning with an unsolicited phone call.

Moreover, Plaintiff proffers seven common questions of law or fact that allegedly apply to every member of the class, four of which concern alleged misconduct by Defendants during telephone calls:

> (a) whether the Defendants' **telephone contacts** with the Plaintiffs used unconscionable terms or unfair business practices and/or whether the unconscionable terms of the MSA should have been revealed during those initial calls; (b) whether the Defendants' failure to divulge the unconscionable terms of the MSA **during their initial calls** to Plaintiffs constituted an unconscionable and/or unfair business practice; (c) whether the Defendants' failure to divulge the terms of the MSA **during the telephonic verification ("TPV") calls** constituted an unconscionable and/or unfair business practice; (d) whether the MSA contains unconscionable terms; (e) whether Defendants' **telephonic contacts** violated the MMPA; (f) whether Defendants' use of the MSA violated the MMPA; and (g) whether and to what extent the Class members were injured by Defendants' conduct.

(Doc. 35 at 3-4 (emphasis added.)) Put simply, when more than half of the questions common to the class may not apply to the proposed representative, his claim is not typical.

### 4. *Adequacy*

Defendants also argue that Plaintiff is not an adequate representative of the class because, in addition to bringing an atypical claim, he labors under a conflict of interest due to his familial relationship with proposed class counsel. (Doc. 2 at 8-12.) Class representatives must "vigorously

prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 563 (citing *Gonzales v. Cassidy*, 474 F.2d 67, 72 (6th Cir. 1973)). A court will reject a proposed representative when there is reason to believe that his or her "interests will be enforced at the expense of other class members or will, in any other way, be antagonistic to the class' interests or if counsel is not competent to pursue the litigation." *Kuenz v. Goodyear Tire & Rubber Co.*, 104 F.R.D. 474, 477 (E.D. Mo. 1985) (quoting *Paxton*, 688 F.2d at 563) (internal quotation marks omitted).

Defendants' primary argument turns on the fact that proposed class counsel is Plaintiff's son-in-law. (Doc. 2 at 10.) "Courts have often denied class certification when the proposed class representative had a close familial relationship to the proposed class counsel." *Irvin E. Schermer Tr. by Kline v. Sun Equities Corp.*, 116 F.R.D. 332, 337 (D. Minn. 1987) (collecting cases). The concern, naturally, is that counsel will enforce the interests of his family at the expense of other class members.

The Court need not address Defendants' allegations against class counsel because Plaintiff's atypical claim renders him an inadequate class representative. Given Plaintiff's deposition testimony, he may not have a viable claim under the MMPA and therefore cannot adequately advance the interests of a class of people who do.

**Conclusion**

For the foregoing reasons, the Court concludes that Plaintiff has failed to meet the requirements for class certification.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Richard Huskey's Motion to Certify a Class Pursuant to Federal Rule of Civil Procedure 23 and Missouri Supreme Court Rule 52.08 (Doc. 5), is **DENIED.** However, Plaintiff's individual claim may proceed.

Dated this 28th day of September, 2018.

                                                       _____
                                                      **JOHN A. ROSS**
                                                      **UNITED STATES DISTRICT JUDGE**